UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES OWENS, et al.,

     Plaintiffs,

       v.                              Civil Action No. 04-1701  (JDB)

UNITED STATES DEPARTMENT OF
JUSTICE, et al.,

     Defendants.

## MEMORANDUM OPINION

This is a suit under the Freedom of Information Act ("FOIA") filed by the plaintiffs in

Civ. A. No. 01-2244 (JDB), who are victims and relatives of victims of terrorist attacks

perpetrated against two United States embassies in Africa in 1998.  These plaintiffs sought, both

via a motion to compel in their civil suit and via a separate FOIA request, documentary materials

that the Federal Bureau of Investigation ("FBI") and other government agencies (collectively

"defendants") had compiled during the investigation of the terrorist attacks and that would have

been subject to discovery in the criminal prosecution of terrorist suspects in the Southern District

of New York.  This Court denied plaintiffs' motion to compel on May 4, 2004.  Owens v.

Republic of Sudan, Civ. A. No. 01-2244, dkt. #77 (Order).  The next day, the FBI denied their

FOIA request.  Plaintiffs' challenge to the FBI's action was assigned to this Court as a related case

pursuant to Local Civ. R. 40.5(c).  Presently before the Court are the parties' cross-motions for

summary judgment.  For the reasons that follow, the Court will defer resolution of both motions

and order defendants to file supplemental materials in accordance with this opinion.

## **BACKGROUND**

The facts underlying plaintiffs' claims in Civ. A. No. 01-2244, <u>Owens v. Republic of Sudan</u>, are fully described in this Court's opinions reported at 412 F. Supp. 2d 99, 102-03 (D.D.C. 2006), and 374 F. Supp. 2d 1, 4-7 (D.D.C. 2005), and will not be repeated here.  This section will instead be limited to presenting the factual and procedural background of plaintiffs' FOIA request.[1]  In order to establish the liability of the foreign state defendants in their civil suit, plaintiffs intend to show that the technique and materials used by the terrorists in the Tanzania and Kenya bombings were the same ones developed by Iranian agents in the 1980's and used to attack a U.S. Marine Corps barracks in Beirut, Lebanon in 1983.  Compl. ¶¶ 3, 9; Pls.' Exh. B (1/12/2004 Letter).  On November 13, 2003, plaintiffs filed a FOIA request accompanied by a subpoena.  Compl. at ¶ 4; Pls.' Exh. A.  The request sought "items already provided by the United States in the course of discovery, or subject to discovery," in the criminal prosecution of suspected terrorists in federal court in New York.  <u>Id.</u>  Plaintiffs requested the following materials:

- Any and all FD-302s regarding the conduct of the physical crime scene searches of each of the Kenya and Tanzania Embassy bombing sites.

- Any and all photographs [including from all responding Evidence Response

---

[1] As defendants correctly point out in their Reply Brief, plaintiffs have failed to comply with Local Civ. R. 7(h) and 56.1, which require that all motions for summary judgment "be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue."  These rules also oblige a party opposing a motion for summary judgment to file "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  Plaintiffs have not filed the required statements either in opposition to defendants' motion or in support of their own.  Accordingly, the Court will treat the facts set forth in defendants' motion ("Defs.' Stmt.") as admitted.  <u>See, e.g.</u>, <u>Securities and Exch. Comm'n v. Banner Fund Int'l</u>, 211 F.3d 602, 616 (D.C. Cir. 2000); <u>Argueta v. District of Columbia</u>, 355 F. Supp. 2d 408, 413 (D.D.C. 2005).

Teams (ERTs)] of each of the Kenya and Tanzania Embassy bombing sites.

- Any and all activity and investigative logs, including sketches, created by both
  the ERTs and Bomb Technicians of each of the Kenya and Tanzania Embassy
  bombing sites.

- Any and all Evidence Logs and/or Inventory Logs of each of the Kenya and
  Tanzania Embassy bombing sites.

- Any and all Laboratory Reports, and ancillary photographs, taken each of the
  bombing sites and during forensic laboratory analysis of evidence and reports of
  forensic results of examination taken from each of the Kenya and Tanzania
  Bombings.

- Any and all interviews of individuals during the on-site investigations and
  physical crime scene searches of each Kenya and Tanzania Embassy bombing
  sites.

- Any and all pertinent information taken from any search and seizure taken from
  Wadi El Hage's computer while living in Dar el Salam or Nairobi.

Id.; Defs.' Stmt. ¶ 1.  A document attached to the subpoena and the FOIA request also indicated

that the requested items were "further identified in FBI files under file references 'Tanbom' and

'Kenbom.'"  Pls.' Exh. A (Attachment).  The FBI acknowledged receipt of the FOIA request on

December 17, 2003.  Defs.' Stmt. ¶ 2.

In response to the FBI's concerns about dissemination of the requested materials, plaintiffs'

counsel sent a letter, along with a copy of the amended complaint in Civ. A. No. 01-2244,

explaining the use to which plaintiffs would put the materials.  Defs.' Exh. 1, Part B (1/12/2004

Letter).  Plaintiffs' January 12 submission also included privacy waivers and certifications-of-

identity forms signed by many of the plaintiffs.  Counsel's letter assured the FBI that the

information obtained would not "be spread upon the public record," but would instead be provided

only to two retired FBI agents who plaintiffs had hired as experts and to the Court for in camera

review.  Id.  Those two agents, counsel noted, "held top security clearances at the time of their

retirements."  Id.  Plaintiffs pressed a similar point the following month in their motion to compel

production of the requested documents.  Owens v. Republic of Sudan, Civ. A. No. 01-2244, dkt.

#41 (D.D.C. Feb. 3, 2004).  The Court denied their motion on May 4, 2004, ruling that plaintiffs

had not demonstrated their compliance with the regulations under which the FBI requires a

requesting party to provide certain information before a third-party subpoena is honored.  Id.

dkt. #77 (Order).

 Just one day after this Court denied plaintiffs' motion to compel, the FBI denied their

FOIA request.  Defs.' Exh. 1, Part D (5/5/2004 Letter).  The letter of denial stated that the

materials requested by plaintiffs were "located in an investigative file which is exempt from

disclosure pursuant to [5 U.S.C. § 552](b)(7)," id., a provision that allows agencies to withhold

"records and information compiled for law enforcement purposes" where, among other things, the

release of those records "could reasonably be expected to interfere with enforcement

proceedings."  5 U.S.C. § 552(b)(7)(A).  At the same time, the FBI reserved the right to invoke

additional statutory exemptions if the investigative file was again reviewed under FOIA or the

Privacy Act.  Defs.' Exh. 1, Part D; Defs.' Stmt. ¶ 4.  The letter also informed plaintiffs of their

right to an administrative appeal, which they promptly filed.  Defs.' Exh. 1, Part E.  Their appeal

was denied on September 28, 2004.  Defs.' Exh. 1, Part G (9/28/2004 Letter).  Shortly thereafter,

on October 5, 2004, plaintiffs filed the present suit seeking judicial review of the FBI's decision.

 After plaintiffs filed suit, the FBI sent plaintiffs' counsel another letter, dated May 26,

2005, in which it explained that it had reviewed 667 pages of material and had decided to release

638 pages of that material.  Defs.' Exh. 1, Part H (5/26/2005 Letter).  Those pages, as plaintiffs

derisively though accurately describe them, were "blank except for the page number."  Pls.' Opp'n

at 1.  In support of the almost complete redactions, the FBI continued to rely primarily on

Exemption 7(A), but also invoked Exemptions 1, 2, 6, 7(C), 7(D), and 7(E) of FOIA.  Defs.' Stmt.

¶ 10.  Those exemptions form the basis for defendants' motion for summary judgment.  In

preparing that motion, however, the FBI determined that 447 of the 667 pages previously

processed required a referral to other agencies.  Defs.' Stmt. ¶ 12.  Accordingly, 134 pages were

referred to the Department of State, 44 pages to the Air Force, and 269 pages to the Central

Intelligence Agency ("CIA").  Id.  As a result, defendants' motion for summary judgment includes

declarations from knowledgeable officials from all four of those agencies, as well as a Vaughn

index provided by the CIA.[2]  Id.

Plaintiffs have countered with a single eighteen-page document opposing defendants'

motion and serving as their memorandum in support of summary judgment ("Pls.' Opp'n").

Although plaintiffs' memorandum itself requests only that the Court conduct an in camera review

of the over 600 pages identified by defendants as responsive to the FOIA request, the later-filed

cross-motion for summary judgment clarifies that plaintiffs want the Court to order "in camera

inspection of the items requested by Plaintiffs pursuant to the Freedom Of Information Act and

upon inspection [to] Order production of those items, subject to redactions as the Court deems

appropriate."  Pls.' Motion at 1.

**DISCUSSION**

---

[2] Accompanying defendants' motion for summary judgment are sworn declarations from officials at the FBI ("Hardy Decl."), the Department of State ("Grafeld Decl."), the Air Force ("Pope Decl."), and the CIA ("Dorn Decl.").  In addition, the FBI has provided 220 redacted pages that are each annotated with the statutory exemptions claimed (Defs.' Exh. 1, Part I), and the CIA has submitted a Vaughn index along with the Dorn Declaration (Defs.' Exh. 4, Part A).

**A.  Legal Framework**

Congress enacted FOIA for the purpose of introducing transparency to government activities.  See Stern v. FBI, 737 F.2d 84, 88 (D.C. Cir. 1984).  Reflecting Congress's awareness of the need to achieve balance between this objective and the vulnerability of  "legitimate governmental and private interests [that] could be harmed by release of certain types of information," Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 872 (D.C. Cir. 1992), FOIA provides for nine exemptions pursuant to which an agency may withhold requested information.  See 5 U.S.C. §§ 552(b)(1)-(9).  While they should generally be construed narrowly, see Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976), these exemptions must be given the "meaningful reach and application" that Congress intended for them.  See John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989).  District courts review de novo an agency's determination that requested information is statutorily exempt from disclosure.  Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993); 5 U.S.C. § 552(a)(4)(B).

The defendant government agency bears the burden of demonstrating that the requested materials have been properly withheld.  U.S. Dep't of State v. Ray, 502 U.S. 164, 174 (1991).  Agency defendants can normally meet this burden by submitting "affidavits describing the material withheld and the manner in which it falls within the exemption claimed."  King v. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987).  So long as the agency affidavits contain sufficient detail to establish "a logical connection between the information and the claimed exemption," the Court must "accord those affidavits substantial weight" and "consider[] the agency's unique insights into what adverse [e]ffects might occur as a result of public disclosure."  Goldberg v. U.S. Dep't of State, 818 F.2d 71, 78 (D.C. Cir. 1987) (internal citations and quotation marks omitted)

(second alteration in original).  The agency will have met its burden - - and will thus be entitled to

summary judgment - - where (1) its "affidavits describe the documents withheld and the

justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that

material withheld is logically within the domain of the exemption claimed, and (2) the affidavits

are neither controverted by contrary record evidence nor impugned by bad faith on the part of the

agency."  King, 830 F.2d at 217.  For the requester to have "a realistic opportunity to challenge the

agency's decision" to refuse disclosure, the agency must provide a description and explanation that

"reveal[s] as much as possible as to the nature of the document[s], without actually disclosing

information that deserves protection."  Oglesby v. U.S. Dep't of the Army, 79 F.3d 1172, 1176

(D.C. Cir. 1996).

        Although agencies often provide (and courts sometimes require) a formal Vaughn index,[3]

the D.C. Circuit has repeatedly held that "it is the function, not the form, of the index that is

important."  Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); see also Judicial

Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 146 (D.C. Cir. 2006) (citing Keys and

emphasizing that the focus is on "the functions of the Vaughn index, not the length of the

document descriptions").  As the court of appeals recently reaffirmed, an agency defendant can

meet its burden by "submit[ting] other measures in combination with or in lieu of the index itself,"

including affidavits from responsible agency officials.  Id.  Courts in this circuit have accordingly

found sufficient to support a grant of summary judgment agency affidavits in conjunction with

copies of redacted pages annotated with codes that allow the court and the requester to identify the

---

        [3] A Vaughn index is a description of records, or portions of records, withheld by the
agency in response to a FOIA request, along with an explanation of the reason for the agency's
nondisclosure.  See Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973).

pertinent FOIA exemptions and the type of information withheld under each exemption.  See, e.g.,

Keys, 830 F.2d at 349; Taylor v. U.S Dep't of Justice, 257 F. Supp. 2d 101, 106 (D.D.C. 2003).

Those submissions constitute an adequate substitute for "the classical Vaughn index" if they

"efficiently and clearly" accomplish the functions performed by such an index: they force the

government to analyze carefully the material withheld, permit the trial court to rule on the

applicability of the exemption, and provide the requester as much information as possible, thus

facilitating the adversarial process.  See Keys, 830 F.2d at 349 (citing Lykins v. Dep't of Justice,

725 F.2d 1455, 1463 (D.C. Cir. 1984)).  The threshold question here is thus whether the

combination of materials submitted by defendants satisfies the objectives of a Vaughn index and

permits the Court to determine the applicability of the array of exemptions that defendants have

invoked.

## B.  Exemption 7(A)

In their motion for summary judgment, defendants invoke many of the nine statutory

exemptions set forth in FOIA, 5 U.S.C. § 552(b).  Defendants' primary basis for releasing the

requested materials in completely redacted form, however, is their assertion that the materials

were compiled for law enforcement purposes and that disclosure of the materials could reasonably

be expected to interfere with the still open investigation into the Tanzania and Kenya bombings.

As such, defendants maintain, all of the requested materials are exempt from disclosure under

5 U.S.C. § 552(b)(7)(A), which allows agencies to withhold "records or information compiled for

law enforcement purposes . . . to the extent that the production of such law enforcement records or

information [] could reasonably be expected to interfere with enforcement proceedings."

Defendants also argue that, if the Court rejects their invocation of Exemption 7(A) in whole or

part, the requested materials were properly withheld under various other statutory exemptions.

To demonstrate that requested records are exempt from disclosure under § 552(b)(7)(A), defendants must show (1) that the records were compiled for law enforcement purposes, and (2) that release of the records could reasonably be expected to interfere with a concrete, prospective law enforcement proceeding.  See Bevis v. Dep't of State, 801 F.2d 1386, 1388-89 (D.C. Cir. 1986) (citing Carson v. U.S. Dep't of Justice, 631 F.2d 1008, 1018 (D.C. Cir. 1980)).  "A record is deemed to have been compiled for [law enforcement purposes] if it was created or acquired in the course of an investigation 'related to the enforcement of federal laws,' and 'the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least a colorable claim of its rationality.'"  Quiñon v. Fed. Bureau of Investigation, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (quoting Pratt v. Webster, 673 F.2d 408, 420-21 (D.C. Cir.1982) (internal quotation marks omitted)).  Defendants assert, and plaintiffs do not dispute, that this threshold showing has been made in the present case, since the requested records were generated during an investigation into terrorist attacks against the United States and the defendant agencies are statutorily authorized to investigate activities of this type.  See Hardy Decl. ¶ 80 (citing 18 U.S.C. § 2331); Grafeld Decl. ¶ 23 (citing 22 U.S.C. §§ 2709, 4802).  Plaintiffs do challenge, however, defendants' contentions that the open investigation constitutes a concrete, prospective law enforcement proceeding and that release of the requested documents could reasonably be expected to interfere with such a proceeding.

In attempting to establish such interference, defendants "need not proceed on a document-by-document basis, detailing to the court the interference that would result from the disclosure of each of them."  Bevis, 801 F.2d at 1389.  They may instead "take a generic approach, grouping

documents into relevant categories that are 'sufficiently distinct to grasp how each . . . category of documents, if disclosed, would interfere with the investigation.'"  Id. (quoting Crooker v. Bureau of Alcohol, Tobacco, and Firearms, 789 F.2d 64, 76 (D.C. Cir. 1986)) (internal citation omitted).  "The hallmark of an acceptable" category, the Crooker court explained, is that it is "functional" in that it permits a reviewing court "to trace a rational link between the nature of the document and the alleged likely interference."  789 F.2d at 76.  Based on these principles, the D.C. Circuit in Bevis announced a three-fold task that must be completed by an agency "wish[ing] to adopt the generic approach" to justify withholding records under Exemption 7(A).  The agency must (1) define its categories functionally, (2) conduct a document-by-document review in order to assign documents to the proper category, and (3) explain to the court how the release of each category would interfere with enforcement proceedings.  Bevis, 801 F.2d at 1389-90.  According to the FBI, this is precisely the procedure that was followed in response to plaintiffs' FOIA request.  Hardy Decl. ¶ 82.

Defendants' attempt to satisfy their burden under Exemption 7(A) is found principally in seven paragraphs of the declaration of David M. Hardy, the official in charge of FOIA and Privacy Act compliance at the FBI.  See Hardy Decl. ¶¶ 82-88.  Hardy divided the materials responsive to plaintiffs' FOIA request into seven categories, each of which he describes in no less than a sentence but no more than a brief paragraph.  The categories are: (a) Electronic Communication; (b) Teletype; (c) Message Re-Addressal Forms; (d) Memorandum; (e) FBI Routing/Action Slip; (f) Work Product Canvas Forms; (g) Third-Party Communications.  Id. ¶ 83.  These generic categories, notwithstanding the brief explanations provided, do not allow "the [C]ourt to trace a rational link between the nature of the document and the alleged likely interference."  See

-10-

Crooker, 789 F.2d at 76.  Indeed, one of the categories - - teletype - - is identical to a category that the D.C. Circuit in Bevis condemned as "giv[ing] absolutely no indication of the substance of the information contained" within the investigative file.  801 F.2d at 1390.[4]  Five of the remaining six categories, the exception being the one labeled "Third-Party Communications," similarly fail to indicate to any degree what type of information those particular records contain.  Stated succinctly, all but one of the categories identify various methods of transmittal without providing so much as a bare sketch of the type of information being transmitted.  Accordingly, the categories do not permit the Court to assess the likelihood that release of the requested information would interfere with a pending or prospective enforcement proceeding.  Defendants have thus failed to complete the "three-fold task" set forth in Bevis.  See id. at 1289.

In reaching this conclusion, the Court recognizes that defendants are walking a fine line and that courts reviewing the withholding of agency records under Exemption 7 cannot demand categories "so distinct as prematurely to let the cat out of the investigative bag."  See Curran v. Dep't of Justice, 813 F.2d 473, 475 (1st Cir. 1987).  Nevertheless, in order for the Court to adjudicate responsibly a plausible claim that large numbers of significant documents are exempt from disclosure under FOIA, defendants must come forward with affidavits and/or other materials that "demonstrate specifically how each . . . category of documents, if disclosed, would interfere

---

[4] The D.C. Circuit in Bevis held that categories such as "the identities of possible witnesses and informants," "reports on the location and viability of potential evidence," and "polygraph reports" satisfied the "functionalism requirement because they allow[ed] the court to assess the FBI's representations of how release of the documents would result in interference to the [prospective] proceedings."  801 F.2d at 1390.  In contrast, categories labeled "teletypes," "airtels," and "letters" established "no basis for a judicial assessment of the FBI's assertions that release of the documents so categorized would interfere with enforcement proceedings."  Id.  As is evident from their titles, these latter categories are directly analogous to six of the seven categories formulated in the Hardy Declaration.

with the investigation."  Campbell v. Dep't of Health and Human Servs., 682 F.2d 256, 265 (D.C.

Cir. 1982).  Although they may well be able to make this showing with only modest modifications

to their submissions, defendants have not yet done so.  The Court therefore concludes, based

strictly on the record before it, that defendants are not entitled to summary judgment under

Exemption 7(A) at this time.

      The question then becomes whether the Court should deny this aspect of defendants'

motion without prejudice and proceed to address defendants' alternative arguments for

withholding the requested documents.  The Court answers that question in the negative, both

because the D.C. Circuit's decision in Bevis suggests a different course and because that course

best serves the virtues of efficiency and judicial economy.  After concluding that at least three of

the categories employed by the agency defendants did not entitle those defendants to summary

judgment, the Bevis court remanded the case "to the district court for a more specific inquiry into

the nature of the withheld documents."  801 F.2d at 1390.  The district court was instructed on

remand to "direct the FBI to reformulate its generic categories in accordance with the Crooker

requirement and then to conduct an item-by-item review in order to assign documents to the

appropriate category."  Id.  In addition, the D.C. Circuit advised the district court to "instruct the

FBI to submit affidavits confirming compliance with these requirements and describing how the

release of each category of documents would interfere with the [prospective enforcement]

proceedings."  Id.  Given the similarity of the categories used in the Hardy Declaration to those

considered in Bevis, defendants need to submit additional materials of the same nature and scope

as the ones required in that case for this Court to evaluate their claims under Exemption 7(A).

      To be sure, the D.C. Circuit in Bevis did not address the precise situation in the present

case, where agency defendants have invoked a host of other exemptions in addition to Exemption

7(A).  Indeed, the district court in one of the two cases consolidated before the court of appeals

had adjudicated the FBI's claim that a smaller number of records were also exempt under

§ 552(b)(1), Bevis v. Dep't of State, 575 F. Supp. 1253, 1254-56 (D.D.C. 1983), and the D.C.

Circuit did not pass upon that issue.  This Court nonetheless concludes that the remand ordered

by, and the instructions prescribed by, the D.C. Circuit in Bevis are warranted in the present

circumstances.  For one thing, Exemption 7(A) is the only statutory exemption that defendants

have invoked with respect to all of the pages deemed responsive to plaintiffs' FOIA request.  It is

also the sole exemption on which the FBI has relied since the administrative proceedings.

(Defendants candidly acknowledge that they have proffered the remaining grounds for

withholding the documents only to avoid waiving those grounds under the D.C. Circuit's decision

in Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 766 (D.C. Cir. 2000).)  See Defs.' Motion at 5.

Furthermore, the Court finds that a limited remand at this stage likely represents the most

expeditious - - and least burdensome - - manner of resolving this case.  Most significantly,

defendants' submissions, though far from crystal clear on the point, reveal that Exemption 7(A) is

the only ground proffered for withholding at least some of the documents.  See, e.g., Grafeld Decl.

¶ 4 (pointing to documents marked F1 and F5 as ones for which the State "Department has not

identified any additional exemptions" beyond Exemption 7(A)).  The applicability of Exemption

7(A) therefore cannot be avoided even if the case is assessed on the alternative grounds offered in

defendants' motion.  Resolving the case on those alternative grounds, moreover, would require the

Court to wade through sworn declarations from three other agencies and a thirty-eight document

Vaughn index provided by the CIA, and to consider sensitive claims related to foreign policy and

national security, as well as less lofty questions like whether the model number of secure data

devices is exempt from disclosure under § 552(b)(2).  And with respect to questions both complex

and mundane, the Court cannot help noting that plaintiffs' at times dismissive responses to

defendants' arguments have not appreciably aided, and to some degree have hampered, the Court's

ability to conduct a de novo review of defendants' decision to resist disclosure.  There is no reason

for this case to be decided based on challenges made in a curt or flippant manner, especially when

deferring decision until after a Bevis-style remand will cause only a minor delay and could very

well flesh out the aforementioned weaknesses in the adversarial process up to this point.

Accordingly, the Court will enter an order that (1) requires defendants to submit additional

materials on the Exemption 7(A) claims in accordance with Bevis and this Memorandum Opinion

and (2) provides plaintiffs with an opportunity to respond to those materials and defendants'

arguments in support thereof.

    Finally, the Court declines, at least for the time being, plaintiffs' request for in camera

review of the 600 plus pages deemed responsive to their FOIA request.  Whether to conduct in

camera review rests squarely within the discretion of the district court.  See Spirko v. U.S. Postal

Serv., 147 F.3d 992, 996 (D.C. Cir. 1998).  The D.C. Circuit has consistently stated, however, that

because this form of review is to some extent antithetical to the nature of the adversary system, it

is to be used as a "last resort."  See, e.g., Hayden v. Cent. Intelligence Agency, 608 F.2d 1381,

1387 (D.C. Cir. 1979); see also Quiñon, 86 F.3d at 1228 (explaining that "an in camera review

should not be resorted to as a matter of course, simply on the theory that 'it can't hurt.'") (citation

omitted).  Here, the so-called Allen factors enunciated by the D.C. Circuit, see Allen v. Cent.

Intelligence Agency, 636 F.2d 1287, 1298 (D.C. Cir. 1980); Carter v. U.S. Dep't of Commerce,

830 F.2d 388, 392 (D.C. Cir. 1987), weigh against in camera review.  While the Court has found

that defendants' explanation with respect to Exemption 7(A) does not, in its current form, suffice

to grant summary judgment, there is no evidence of agency bad faith, and the documents at issue

are numerous, rather than "few in number and of short length."  See Allen, 636 F.2d at 1298;

Carter, 830 F.2d at 393.  Hence, the Court cannot conclude at this time that "'in camera inspection

is needed in order to make a responsible de novo determination on the claims of exemption.'"  See

id. at 392 (quoting Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (per curiam)).  Plaintiffs

remain free to reassert the need for in camera review in their response to the additional

submissions forthcoming from defendants.


### CONCLUSION

For the foregoing reasons, the Court defers resolution of the parties' cross-motions for

summary judgment and orders defendants to provide the materials described above in support of

their argument that the documents requested by plaintiffs are exempt from disclosure under 5

U.S.C. § 552(b)(7)(A).  A separate order has been posted on this date.


                                  /s/
                    _____
                         JOHN D. BATES
                    United States District Judge

Dated:   December 1, 2006