**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

JAMES OWENS, et al.,

     Plaintiffs,

       v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al.,

     Defendants.

Civil Action No. 04-1701  (JDB)

---

<u>**MEMORANDUM OPINION**</u>

This is a suit under the Freedom of Information Act ("FOIA") filed by the plaintiffs in

Civ. A. No. 01-2244 (JDB), who are victims and relatives of victims of terrorist attacks

perpetrated against two United States embassies in East Africa in 1998.  Plaintiffs are seeking

documentary materials that the Federal Bureau of Investigation ("FBI") and other government

agencies (collectively "defendants") have compiled during the investigation of the terrorist attacks

and that would have been subject to discovery in the criminal prosecution of terrorist suspects in

the Southern District of New York.  On December 1, 2006, this Court issued a Memorandum

Opinion and Order deferring a ruling on the parties' cross-motions for summary judgment and

requiring defendants to submit supplemental materials in support of the FOIA exemption on

which they principally relied.  Defendants have submitted those materials, and plaintiffs have

declined the opportunity to file a response.  Having considered the supplemental materials and the

parties' previous submissions, the Court will grant defendants' motion for summary judgment and

deny plaintiffs' motion.

## BACKGROUND

The Court will assume familiarity with the factual background set forth in its December 1, 2006 Memorandum Opinion and the two published opinions that have been issued in Civ. A. No. 01-2244.  See Owens v. U.S. Dep't of Justice, Civ. A. No. 04-1701, 2006 WL 3490790, at *1-*3 (D.D.C. Dec. 1, 2006) ("Owens III"); Owens v. Republic of Sudan, 412 F. Supp. 2d 99, 102-03 (D.D.C. 2006); Owens v. Republic of Sudan, 374 F. Supp. 2d 1, 4-7 (D.D.C. 2005).  What follows is a brief summary of this FOIA litigation.  In order to establish the liability of the foreign state defendants in their civil suit, plaintiffs intend to show that the technique and materials used by the terrorists in the Tanzania and Kenya embassy bombings were the same ones developed by Iranian agents in the 1980's and used to attack a U.S. Marine Corps barracks in Beirut, Lebanon in 1983. Compl. ¶¶ 3, 9; Pls.' Exh. B (1/12/2004 Letter).  Plaintiffs thus filed a FOIA request seeking information about the Tanzania and Kenya bombings - - specifically, seven categories of "items already provided by the United States in the course of discovery, or subject to discovery," in the criminal prosecution of suspected terrorists in federal court in New York.  Pls.' Exh. A; Defs.' Stmt. ¶ 1.  A document attached to the FOIA request indicated that the requested items were "further identified in FBI files under file references 'Tanbom' and 'Kenbom.'"  Pls.' Exh. A. Plaintiffs' FOIA request was received by the FBI in December of 2003.  Defs.' Stmt. ¶ 2.

The FBI denied the FOIA request on May 5, 2004.  Defs.' Exh. 1, Part D (5/5/2004 Letter). After their administrative appeals proved fruitless, plaintiffs filed the present suit seeking judicial review of the FBI's decision.  In response, the FBI reviewed the 667 pages of material deemed responsive to plaintiffs' request and released 638 of those pages in completely redacted form.

Owens III, 2006 WL 3490790, at *3.  Defendants then filed a motion for summary judgment, arguing that the withheld documents and portions thereof were subject to Exemptions 1, 2, 6, 7(A), 7(C), 7(D), and 7(E) of FOIA.  Although they invoked seven statutory exemptions, defendants relied principally on Exemption 7(A), which allows agencies to withhold "records and information compiled for law enforcement purposes" where the release of those records "could reasonably be expected to interfere with enforcement proceedings."  See 5 U.S.C. § 552(b)(7)(A). Defendants maintained that all of the responsive materials were properly withheld under Exemption 7(A), but advanced the other exemptions to avoid waiving them.  See Defs.' Memorandum in Support of Motion for Summary Judgment ("Defs.' Mem.") at 5 (citing Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 765-66 (D.C. Cir. 2000)).  Plaintiffs countered with a single eighteen-page document opposing defendants' motion and serving as their memorandum in support of summary judgment.  Their cross-motion for summary judgment asked the Court to order "in camera inspection of the items requested by Plaintiffs pursuant to the Freedom Of Information Act and upon inspection [to] Order production of those items, subject to redactions as the Court deems appropriate."  Pls.' Motion for Summary Judgment at 1.

The Court deferred ruling on the parties cross-motions for summary judgment and ordered defendants to provide supplemental materials.  Owens III, 2006 WL 3490790, at *8.  Evaluating defendants' across-the-board invocation of Exemption 7(A), the Court explained that defendants had to make two showings in order to obtain summary judgment: "(1) that the records were compiled for law enforcement purposes, and (2) that release of the records could reasonably be expected to interfere with a concrete, prospective law enforcement proceeding."  Id. at *5 (citing Bevis v. Dep't of State, 801 F.2d 1386, 1388-89 (D.C. Cir. 1986)).  While the first of these two

showings was not in dispute, the Court concluded that defendants had failed to make the second

showing because they had not divided the responsive documents into "functional" categories that

allowed this Court "'to trace a rational link between the nature of the document and the alleged

likely interference'" with a prospective enforcement proceeding.  Id. at *5 (quoting Crooker v.

Bureau of Alcohol, Tobacco, and Firearms, 789 F.2d 64, 67 (D.C. Cir. 1986)).  Some of the

categories, the Court noted, were identical to ones that the D.C. Circuit in Bevis had found

insufficient to satisfy the Crooker requirement.  See Bevis, 801 F.2d at 1390.

The Court then examined whether it should proceed to consider the other exemptions

claimed by defendants.  The Court answered that question in the negative for two reasons.  For

one thing, the D.C. Circuit's decision in Bevis suggested that a remand to the agency with

instructions to comply with Crooker's functionalism requirement was a sound course to follow.

Owens III, 2006 WL 3490790, at *6.  For another, the Court would eventually have to reach the

Exemption 7(A) claim - - because it was the only ground for withholding some of the documents

- - and should do so with the best materials available to it, rather than reaching claims that

plaintiffs had challenged only in a glib or incomplete manner.  Id. at *7.  Finally, the Court

rejected plaintiffs' request that it conduct in camera review of the withheld documents, noting that

D.C. Circuit precedents viewed in camera review as a "last resort" to be used when the documents

are few in number or there is some indication of bad faith on the part of the agency.  Id. at *8

(citations omitted).  The Court thus ordered defendants "to submit additional materials on the

Exemption 7(A) claims in accordance with Bevis and th[e] Memorandum Opinion," and offered

plaintiffs "an opportunity to respond to those materials and defendants' arguments in support

thereof."  Id.

Defendants responded to the Court's order in two ways.  First, they re-reviewed the withheld documents and released to plaintiffs portions of approximately seventeen pages to which defendants no longer believe that Exemption 7(A) applies.  Defs.' Supp. Exh. 2.  Defendants maintained, however, that the portions of those pages still redacted were exempt from disclosure under other provisions of FOIA.  Id.  Second, defendants timely filed supplemental materials, which consisted of a second declaration from David M. Hardy, the official charged with FOIA and Privacy Act compliance at the FBI, and a memorandum renewing their motion for summary judgment on both their Exemption 7(A) claim and their other exemption claims.  The memorandum informed the Court that defendants had withdrawn in part their Exemption 7(A) claim as to seventeen documents, and that the Court would therefore need to consider the applicability of the other exemptions claimed for those documents.  Defs.' Supp. Mem. at 2 n.1. Plaintiffs, for their part, had until February 16, 2007 to file a response to the supplemental materials submitted by defendants.  Having received no response from plaintiffs, the Court will undertake its statutory responsibility to conduct a de novo review of the claimed exemptions on the basis of the supplemental materials provided by defendants and the parties' previous submissions.

## DISCUSSION

### A.  Summary judgment standard

"Summary judgment is the preferred method of resolving cases brought under FOIA." Evans v. U.S. Office of Personnel Management, 276 F. Supp. 2d 34, 37 (D.D.C. 2003); see also Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  The standard is a familiar

one: summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, 'which it believes demonstrate the absence of a genuine issue of material fact.'" Id. (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

In the FOIA context, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations "describe the documents and the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor by evidence of

agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  Agency

affidavits or declarations must be "relatively detailed and non-conclusory," and are accorded "a

presumption of good faith, which cannot be rebutted by purely speculative claims about the

existence and discoverability of other documents."  SafeCard Services v. Sec. & Exch. Comm'n,

926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and quotation marks omitted).

**B.  Legal Framework**

Congress enacted FOIA for the purpose of introducing transparency to government

activities.  See Stern v. FBI, 737 F.2d 84, 88 (D.C. Cir. 1984).  Reflecting Congress's awareness

of the need to achieve balance between this objective and the vulnerability of  "legitimate

governmental and private interests [that] could be harmed by release of certain types of

information," Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 872

(D.C. Cir. 1992) (en banc) (citation and quotation marks omitted), FOIA provides for nine

exemptions pursuant to which an agency may withhold requested information.  See 5 U.S.C.

§§ 552(b)(1)-(9).  While they should generally be construed narrowly, see Dep't of the Air Force

v. Rose, 425 U.S. 352, 361 (1976), these exemptions must be given the "meaningful reach and

application" that Congress intended for them, John Doe Agency v. John Doe Corp., 493 U.S. 146,

152 (1989).  District courts review de novo an agency's determination that requested information

is statutorily exempt from disclosure.  5 U.S.C. § 552(a)(4)(B); Beck v. Dep't of Justice, 997 F.2d

1489, 1491 (D.C. Cir. 1993).

The defendant government agency bears the burden of demonstrating that the requested

-7-

materials have been properly withheld.  U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991).

Agency defendants can normally meet this burden by submitting "affidavits describing the

material withheld and the manner in which it falls within the exemption claimed."  King v. Dep't

of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987).  So long as the agency affidavits contain sufficient

detail to establish "a logical connection between the information and the claimed exemption," the

Court must "accord those affidavits substantial weight" and "consider[] the agency's unique

insights into what adverse [e]ffects might occur as a result of public disclosure."  Goldberg v. U.S.

Dep't of State, 818 F.2d 71, 78 (D.C. Cir. 1987) (internal citations and quotation marks omitted)

(second alteration in original).  The agency will have met its burden - - and will thus be entitled to

summary judgment - - where (1) its "affidavits describe the documents withheld and the

justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that

material withheld is logically within the domain of the exemption claimed, and (2) the affidavits

are neither controverted by contrary record evidence nor impugned by bad faith on the part of the

agency."  King, 830 F.2d at 217.  For the requester to have "a realistic opportunity to challenge the

agency's decision" to refuse disclosure, the agency must provide a description and explanation that

"reveal[s] as much as possible as to the nature of the document[s], without actually disclosing

information that deserves protection."  Oglesby v. U.S. Dep't of the Army, 79 F.3d 1172, 1176

(D.C. Cir. 1996).

Although agencies often provide (and courts sometimes require) a formal Vaughn index

describing the records withheld and the reasons for nondisclosure, see Vaughn v. Rosen, 484 F.2d

820, 827 (D.C. Cir. 1973), the D.C. Circuit has repeatedly held that "it is the function, not the

form, of the index that is important."  Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir.

1987); <u>see also</u> <u>Judicial Watch, Inc. v. Food & Drug Admin.</u>, 449 F.3d 141, 146 (D.C. Cir. 2006)

(citing <u>Keys</u> and emphasizing that the focus is on "the functions of the <u>Vaughn</u> index, not the

length of the document descriptions").  As the court of appeals recently reaffirmed, an agency

defendant can meet its burden by "submit[ting] other measures in combination with or in lieu of

the index itself," including affidavits from responsible agency officials.  <u>Id.</u>  Courts in this circuit

have accordingly found sufficient to support a grant of summary judgment agency affidavits in

conjunction with copies of redacted pages annotated with codes that allow the court and the

requester to identify the pertinent FOIA exemptions and the type of information withheld under

each exemption.  <u>See, e.g.</u>, <u>Keys</u>, 830 F.2d at 349; <u>Taylor v. U.S Dep't of Justice</u>, 257 F. Supp. 2d

101, 106 (D.D.C. 2003).  Those submissions constitute an adequate substitute for "the classical

<u>Vaughn</u> index" if they "efficiently and clearly" accomplish the functions performed by such an

index: they force the government to analyze carefully the material withheld, permit the trial court

to rule on the applicability of the exemption, and provide the requester as much information as

possible, thus facilitating the adversarial process.  <u>See</u> <u>Keys</u>, 830 F.2d at 349 (citing <u>Lykins v.</u>

<u>Dep't of Justice</u>, 725 F.2d 1455, 1463 (D.C. Cir. 1984)).

## C.  Waiver and Other Foreclosed Arguments

Three of plaintiffs' arguments fail under controlling Supreme Court and circuit precedent

and can be rejected at the outset.  First, plaintiffs emphasize throughout their brief - - as they did

in the administrative proceedings - - that they are seeking the documents as part of a lawsuit

designed to vindicate the rights of victims of international terrorism.  <u>See, e.g.</u>, Pls.' Opp'n at 1, 2,

5; Defs.' Exh. C at 2 (1/12/2004 Letter).  But it is settled law that, except when claims of privilege

are involved, neither the identity of FOIA requesters nor the purpose of their lawsuit has any

bearing on the merits of their suit.  See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 771-72 (1989); Swan v. Sec. & Exch. Comm'n, 96 F.3d 498, 499 (D.C. Cir. 1996); North v. Walsh, 881 F.2d 1088, 1096 (D.C. Cir. 1989).  As the D.C. Circuit explained in Swan, where "the exemption . . . invoked does not rest on a claim of privilege, the Reporters Committee principle dictates that the requesters' identities are of no significance."  96 F.3d at 499 (emphasis added).

Second and relatedly, plaintiffs' emphasis on their intention to share the requested documents only with two former FBI agents hired as expert witnesses rests on a fundamental misconception of the law.  See Pls.' Opp'n at 4-5, 15.  The Supreme Court's recent decision in Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004), reaffirmed what has long been the law in the D.C. Circuit: that, "[a]s a general rule, if the information is subject to disclosure, it belongs to all."  See also Students Against Genocide v. Dep't of State, 257 F.3d 828, 836 (D.C. Cir. 2001) ("[A] disclosure made to any FOIA requester is effectively a disclosure to the world at large.").  "There is no mechanism under FOIA," the Favish Court explained, "for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing [the information's] general dissemination."  541 U.S. at 174.  Accordingly, because the agency that releases the records has no power to limit the dissemination of those documents, "[a]gencies, and hence courts, must evaluate the risk of disclosing records to some particular FOIA requester not simply in terms of what the requester might do with the information, but also in terms of what anyone else might do with it."  Swan, 96 F.3d at 500.  Plaintiffs' assurance that they would share the requested documents only with two former FBI agents, even if credible, therefore has no place in the Court's analysis.

The last of plaintiffs' generalized arguments merits slightly more discussion.  Citing to the

D.C. Circuit's decision in Afshar v. Dep't of State, 702 F.2d 1125 (D.C. Cir. 1983), plaintiffs

appear to argue that most if not all of the responsive documents cannot be withheld under

statutory exemptions because those documents have already been publicly disclosed in trial

proceedings in the Southern District of New York.  See Pls.' Opp'n at 16.  "Under [this] public-

domain doctrine, materials normally immunized from disclosure under FOIA lose their protective

cloak once disclosed and preserved in a permanent public record."  Cottone v. Reno, 193 F.3d

550, 554 (D.C. Cir. 1999).  Plaintiffs cannot, however, defeat defendants' exemption claims

simply by pointing to a judicial proceeding in which some of the responsive documents may or

could have been released.  Rather, as the party bearing the burden of demonstrating disclosure,

plaintiffs "must 'point[] to specific information in the public domain that appears to duplicate that

being withheld.'"  Id. (quoting Afshar, 702 F.2d at 1130) (alteration in Cottone).  In addition, "the

specific information sought must have been 'disclosed and preserved in a permanent public

record.'"  See Students Against Genocide, 257 F.3d at 836 (holding that the government had not

waived its right to claim FOIA exemptions where the Ambassador to the United Nations

displayed the photographs at issue to delegates of foreign governments that belonged to the U.N.

Security Council) (quoting Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1280 (D.C. Cir. 1992)).

Even absent the "permanent public record" requirement, plaintiffs have not come close to

meeting their burden here.  They have not pointed to any "specific information in the public

domain that appears to duplicate" the seven categories of materials that they seek via their FOIA

request.  See Afshar, 702 F.2d at 1130.  Their blanket assertion that "much of the information

being withheld has already been to disclosed to counsel for [the] criminal defendants" in the New

York proceedings is nothing more than speculation.  Pls.' Opp'n at 15-16.  Absent from the record, for instance, are copies of any documents disclosed during the earlier criminal case, affidavits or testimony from defense counsel in that case, or other sources of evidence that could meet the level of specificity required by the D.C. Circuit.  This meager showing does not make the Court "confident that the information sought is truly public and that the requester [would be] receiv[ing] no more than what is publicly available."  See Cottone, 193 F.3d at 555.  In short, their inability to identify with specificity which requested documents (if any) have been previously disclosed means that plaintiffs have failed to carry their burden under the public-domain doctrine.  But even though plaintiffs have failed to establish that the materials they seek are "in the public domain, the government, to continue withholding the information, still must prove that it falls within a statutory exemption."  Davis, 968 F.2d at 1280.  It is to this inquiry that the Court now turns.

## D.  Exemption 7(A)

Defendants' principal ground for denying the FOIA request remains Exemption 7(A).  As explained in Owens III and above, defendants must show (1) that the records they have withheld were compiled for law enforcement purposes, and (2) that release of those records could reasonably be expected to interfere with a concrete, prospective law enforcement proceeding. 2006 WL 3490790, at *5 (citations omitted).  The second of these showings, which is the only one currently in dispute, can be further divided into two requirements: (a) identification of a concrete prospective law enforcement proceeding, and (b) demonstration that releasing the requested documents could reasonably be expected to interfere with such a proceeding.

As to the identification of a prospective law enforcement proceeding, plaintiffs protest that the FBI "has not detailed any criminal proceeding in [sic] which they believe will be pending in

the future," and object to defendants' failure "to provide an affidavit from any person with first hand knowledge" of the status of the New York office's investigation.  Pls.' Opp'n at 10.  The heavy burden that plaintiffs seek to place on defendants, however, is at odds with governing D.C. Circuit precedent.  In <u>Bevis</u>, for example, the court of appeals found that the government had met its burden of identifying a concrete prospective law enforcement proceeding even though any such proceeding would take place in El Salvador and that country's Supreme Court had already dismissed the charges against the three prime suspects.  801 F.2d at 1389.  It was enough, the court held, that the Salvadoran government remained committed to prosecuting those involved in the crimes and that the investigatory records at issue implicated the suspects in "other disappearances and killings under active investigation."  <u>Id.</u>  More recently, in another FOIA case related to terrorism, the court of appeals confirmed that "Exemption 7(A) does not require a presently pending 'enforcement proceeding.'  Rather, . . . it is sufficient that the government's ongoing September 11 terrorism investigation is likely to lead to such proceedings."  <u>Center for Nat. Sec. Studies v. Dep't of Justice</u>, 331 F.3d 918, 926 (D.C. Cir. 2003).  The court's most recent decision construing Exemption 7(A), <u>Boyd v. Crim. Div. of the U.S. Dep't of Justice</u>, 475 F.3d 381 (D.C. Cir. 2007), is to the same effect.  There, the court relied on <u>Bevis</u> in concluding that the government had met its burden by identifying in general terms the targets of the investigation and by averring that data continued to be collected as part of a "still active" investigation involving the FOIA requester and his associates.  <u>Id.</u> at 386.

Measured against these precedents, defendants here have easily carried their burden of identifying a concrete prospective law enforcement proceeding with which disclosure of the records could reasonably be expected to interfere.  The Hardy Declarations set forth the FBI's

representation that "there are fugitives who have yet to be apprehended, interviews of persons are still being considered, [and] evidentiary documentary material is still being obtained through Federal Grand Jury subpoenas and from confidential sources."  First Hardy Decl. ¶ 84; Second Hardy Decl. ¶ 11.  Nothing in plaintiffs' submission serves to impeach this representation, which is further supported by the fact there have already been domestic criminal prosecutions arising from the Tanzania and Kenya bombings.  If the government can meet its burden (1) based on the possibility that foreign officials will continue enforcement proceedings after a significant legal setback, see Bevis, 801 F.2d at 1389; and (2) based on a declaration that the FBI was still investigating Jimmy Hoffa's disappearance fourteen years after the fact, see Dickerson v. Dep't of Justice, 992 F.2d 1426, 1432 (6th Cir. 1993), then it has certainly met its burden here, where the sensitive investigations have already led to criminal prosecutions and involve events halfway around the world.  Defendants, in short, have provided "sufficient specificity regarding the government's investigation" to demonstrate the existence of a concrete prospective law enforcement proceeding.  See Boyd, 475 F.3d at 386.

The remaining question is the one on which the Court focused in Owens III: whether, under the "generic approach" endorsed in Bevis, defendants have established that release of the requested documents could reasonably be expected to interfere with the potential criminal proceedings described above.  2006 WL 3490790, at *5.  Under this approach, they must "group[] documents into relevant categories that are sufficiently distinct to grasp how each . . . category of documents, if disclosed, would interfere with the investigation."  Id. (citations and quotation marks omitted).  These categories must allow the reviewing "court to trace a rational link between the nature of the document and the alleged likely interference."  Id. (quoting Crooker, 789 F.2d at

76).  The Court has already determined that the "categories" utilized by defendants in the submissions supporting their summary judgment motion - - Electronic Communication, Teletype, Message Re-Addressal Forms, Memorandum, FBI Routing/Action Slips, Work Product Canvas Forms, and Third-Party Communications - - do not satisfy the Crooker standard.  Id.  These categories were flawed because they "identif[ied] various methods of transmittal without providing so much as a bare sketch of the type of information being transmitted."  Id.  Hence, the Court must assess whether defendants' supplemental filings, and specifically the Second Hardy Declaration, cure the deficiencies identified in Owens III and entitle defendants to summary judgment on their Exemption 7(A) claim.

The supplemental filings do just that.  In his Second Declaration, Hardy has divided the withheld documents into five sometimes-overlapping categories: Strategic Documents, Documents Containing Information Shared Between the FBI and Foreign Law Enforcement Agencies and the FBI and other U.S. Government Agencies, Source Information Documents, Evidentiary Documents, and Administrative Documents.  Second Hardy Decl. ¶¶ 17-21.  These categories are a vast improvement over the ones listed above, one of which was identical to a category condemned by the D.C. Circuit as "giv[ing] absolutely no indication of the substance of the information contained" in the investigative files.  Bevis, 801 F.2d at 1390.  In sharp contrast, the new categories, along with the descriptions provided by Hardy, demonstrate that release of the documents would place on the public record information about the government's investigative strategy, the identities of sources and suspects, the nature and existence of video and photographic evidence, and the type of secure communications equipment used by government agents.  See Second Hardy Decl. ¶¶ 17-21; see also Edmonds v. Fed. Bureau of Investigation, 272 F. Supp. 2d

35, 54-55 (D.D.C. 2003) (upholding Exemption 7(A) claim where material had been divided into the two categories of evidentiary materials and investigative materials).  The Hardy Declaration also explains that which is obvious given the nature of the information in the documents: the likelihood that disclosure would reveal sensitive strategic information, endanger sources, alert potential suspects, lead to the destruction of evidence, and increase the risk that agents in the field will be detected.  <u>See</u> Second Hardy Decl. ¶¶ 17-21.  As the D.C. Circuit recently reiterated in <u>Boyd</u>, the government satisfies its burden under Exemption 7(A) when it explains how disclosure would reveal "the size, scope, and direction of [the] investigation," or how it would permit suspects to avoid arrest and prosecution, "destroy or alter evidence, fabricate fraudulent alibis, and take other actions to frustrate the government's case."  457 F.3d at 286 (quoting <u>Alyeska Pipeline Serv. Co. v. U.S. Envtl. Prot. Agency</u>, 856 F.2d 309, 312 (D.C. Cir. 1988)).  The Second Hardy Declaration establishes how, and the degree to which, disclosure could be expected to do all of those things here.  Accordingly, the government has carried its burden and is entitled to summary judgment on its Exemption 7(A) claim.

**E.  Other Exemptions**

As the Court understood the posture of this case in <u>Owens III</u>, upholding defendants' Exemption 7(A) claim would be the end of the matter.  <u>See</u> Defs.' Mem. at 5.  Defendants have since informed the Court, however, that they are no longer withholding twenty-two pages (or portions thereof) under Exemption 7(A), but are still asserting other FOIA exemptions with respect to sections of those documents.  <u>See</u> Defs.' Supp. Exh. 2 (1/30/2007 Letter); Defs.' Supp. Mem. at 2 n.1; Second Hardy Decl. at 4 n.3.  The pages in question are Tanbom/Kenbom 1-5, 13, 15, 17, 28, 30, 34, 45, 47, 51, 53, 143, 144, 153, 154, 164, 165, and 167.  Defs.' Supp. Exh. 2;

Second Hardy Decl. at 9 n.4.  As for the specific exemptions invoked, defendants assert

Exemptions 2, 6, and 7(C) for almost all of those pages, and Exemption 7(D) for page 4.  Because

the Court concludes that all of the pages are properly withheld under Exemptions 7(C) and 7(D), it

will enter summary judgment for defendants on those grounds without addressing the applicability

of Exemptions 2 and 6.

    *1. Exemption 7(C)*

    Defendants have invoked Exemption 7(C), along with Exemption 6, to justify withholding

portions of documents that contain the names or other identifying information of FBI Special

Agents and support personnel and that are not otherwise covered by Exemption 7(A).  <u>See</u> Defs.'

Mem. at 25 n.14, 32 n.17; First Hardy Decl. ¶¶ 65-67, 91-93; Defs.' Supp. Exh. 2.  "Exemption

7(C) excuses from disclosure 'records or information compiled for law enforcement purposes' if

their production 'could reasonably be expected to constitute an unwarranted invasion of personal

privacy.'"  <u>Favish</u>, 541 U.S. at 160 (quoting 5 U.S.C. § 552(b)(7)(C)).  This exemption "requires

the agency and the reviewing court to weigh the public interest in the release of information

against the privacy interest in nondisclosure."  <u>Schrecker v. U.S. Dep't of Justice</u>, 349 F.3d 657,

661 (D.C. Cir. 2003).  "The public interest in disclosure must be evaluated in light of FOIA's

central purpose: 'to open agency action to the light of public scrutiny.'"  <u>Id.</u> (quoting <u>Reporter's

Comm.</u>, 489 U.S. at 772)).  Hence, "unless a FOIA request advances 'the citizens' right to be

informed about what their government is up to,' no relevant public interest is at issue."  <u>Nat'l Ass'n

of Home Builders v. Norton</u>, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting <u>Reporter's Comm.</u>, 489

U.S. at 773 (quotation marks omitted)).

    The factors in the balancing test weigh heavily in favor of defendants here.  As for the

privacy interest of the FBI agents and support personnel, the D.C. Circuit's "decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." Schrecker, 349 F.3d at 661 (collecting cases); see also Lesar v. Dep't of Justice, 636 F.2d 472, 487 (D.C. Cir. 1980) (recognizing that FBI "agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives"). The First Hardy Declaration establishes that the information withheld includes "the names of FBI [Special Agents] who are responsible for conducting, supervising, and/or maintaining the investigative activities reported in the bombings investigations," as well as the names of support personnel who have access to sensitive law enforcement and counter-terrorism information. First Hardy Decl. ¶¶ 91, 93. Accordingly, defendants have established a legitimate privacy interest.

On the other side of the balance, plaintiffs have not explained how disclosure of these people's names and identities would either advance "the citizens' right to be informed about 'what their government is up to,'" or "open agency action to the light of public scrutiny." Reporter's Comm., 489 U.S. at 772-73 (citations and quotation marks omitted); see also Ray v. Fed. Bureau of Investigation, 441 F. Supp. 2d 27, 34-35 (D.D.C. 2006) (upholding the withholding of names of FBI agents and support staff under Exemption 7(C) because disclosure would "shed[] no light on the FBI's activities or operations"). The public interest in knowing which FBI agents and support personnel are working on a sensitive case and how to contact those employees is at best "negligible," and more likely nonexistent. See U.S. Dep't of Defense v. Fed. Labor Relations Auth., 510 U.S. 487, 497 (1994) (finding that disclosure of employees' addresses "would reveal

little or nothing about the employing agencies or their activities"); see also Ray, 441 F.Supp. 2d at 34 (noting that "[r]edaction of the names of federal, state and local law enforcement personnel under similar circumstances routinely is upheld"); Mendoza v. Drug Enforcement Admin., 465 F. Supp. 2d 5, 12 (D.D.C. 2006) (same). This slight public interest cannot overcome the legitimate privacy interests of the FBI agents and support personnel in keeping their names and other personal information off of the public record and thus avoiding the potential for "harassing inquiries" and future contact with parties holding a grudge against them. See First Hardy Decl. ¶¶ 91, 93. In the end, "'something, even a modest privacy interest, outweighs nothing every time.'" See Horowitz v. Peace Corps, 428 F.3d 271, 278 (D.C. Cir. 2005) (quoting Nat'l Ass'n. of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir.1989)). Defendants have thus properly withheld the identities and personal information of FBI agents and other agency employees under Exemption 7(C).

2. *Exemption 7(D)*

The one remaining document not excused from disclosure under Exemptions 7(A) and 7(C) is page four of the Tanbom/Kenbom files. See Second Hardy Decl. at 9 n.4; First Hardy Decl. ¶ 109. Defendants assert that this page, or at least the portion of it that they seek to withhold, has been properly withheld under Exemption 7(D), which permits government agencies to withhold records or information compiled for law enforcement purposes to the extent that production of those records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." See 5 U.S.C. § 552(b)(7)(D). The exemption applies if the source who provided "the information at issue was granted confidentiality, either expressly or by implication." Mays v. Drug Enforcement Admin., 234 F.3d

1324, 1328 (D.C. Cir. 2000) (citing <u>Dep't of Justice v. Landano</u>, 508 U.S. 165, 172 (1993)).

Defendants here do not claim that their sources were expressly promised confidentiality, but instead maintain that the promise of confidentiality was "implied." <u>See</u> First Hardy Decl. ¶ 106.  While rejecting the proposition that confidentiality can be assumed any time a source provides information to law enforcement agents as part of a criminal investigation, the Supreme Court has acknowledged that there are "generic circumstances in which an implied assurance of confidentiality fairly can be inferred." <u>Landano</u>, 508 U.S. at 179.  Whether a particular set of circumstances so qualifies depends on "the character of the crime at issue" and "the source's relation to the crime." <u>Id.</u>  Reading <u>Landano</u> as calling for "probability judgments in assessing whether an implied grant of confidentiality attaches to a particular type of source," the D.C. Circuit has focused on "the violence and risk of retaliation that attend [the] type of crime" about which the source provided information.  <u>See</u> <u>Mays</u>, 234 F.3d at 1329.  The court of appeals has thus held that courts may reasonably infer that the source expected confidentiality where the crimes at issue were (1) a conspiracy to distribute crack and powder cocaine, (2) the possession of numerous weapons in connection with large-scale drug trafficking, and (3) a seditious conspiracy in which a criminal enterprise with a history of violence advocated overthrow of the government. <u>See</u> <u>id.</u>; <u>Engelking v. Drug Enforcement Admin.</u>, 119 F.3d 980, 981 (D.C. Cir. 1997) (per curiam); <u>Williams v. Fed. Bureau of Investigation</u>, 69 F.3d 1155, 1159-60 (D.C. Cir. 1995) (per curiam).

The circumstances of this case are likewise ones "in which an implied assurance of confidentiality fairly can be inferred." <u>See</u> <u>Landano</u>, 508 U.S. at 179.  Defendants aver in a sworn declaration that the sources whose identities they seek to protect "provided information

concerning the key persons who are of interest to the FBI and other law enforcement agencies"

investigating the Tanzania and Kenya bombings, and that the "specific detailed information"

furnished by those informants "is singular in nature."  First Hardy Decl. ¶ 108.  Terrorist

bombings that kill large numbers of civilians, even more so than the types of crimes already

accorded a categorical presumption by the D.C. Circuit, are violent in nature and implicate a grave

risk of retaliation.  See Mays, 234 F.3d at 1329.  Indeed, the nature of the two bombings

themselves demonstrates why "disclosure of the identities of these informants could subject them

to violent reprisals."  First Hardy Decl. ¶ 108.  "[T]he character of the crime at issue," in sum,

strongly suggests that the sources "furnished information with the understanding that the FBI

would not divulge the communication[s] except to the extent the Bureau thought necessary for

law enforcement purposes."  See Landano, 508 U.S. at 174, 179.

Finally, the Court must consider "the source's relation to the crime."  Id. at 179; Williams,

69 F.3d at 1159.  It is true that the Hardy Declaration provides few details about the relationship

between the informants and those who allegedly perpetrated the bombings.  Such details,

however, are not an absolute requirement.  The D.C. Circuit has rejected the argument that

"evidence of a close relationship between the source and the crime is required in order to infer

confidentiality."  Mays, 234 F.3d at 1330.  Rather, that court has explained, "whatever his 'relation

to the crime,' an informant is at risk to the extent the criminal enterprise he exposes is of a type

inclined toward violent retaliation."  Id. at 1330.  If "criminal enterprises" that distribute drugs or

advocate the overthrow of the government qualify as ones so "inclined toward violent retaliation"

that confidentiality can be inferred, see id., then surely so do terrorist organizations that have

already carried out precise attacks on an international scale claiming the lives of hundreds of

innocent civilians.  "[T]he violence and risk of retaliation that attend" terrorist attacks, in short, "warrant an implied grant of confidentiality" for a source who provides information related to such an attack.  See id. at 1329.  Accordingly, defendants have established that page four was properly withheld under Exemption 7(D).

## **CONCLUSION**

For the foregoing reasons, the Court grants defendants' motion for summary judgment and denies plaintiffs' motion for summary judgment.  A separate order has been posted on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:   March 9, 2007